NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VICTOR MANUEL URQUIAGA,<br><br>    Petitioner,<br><br>v.<br><br>ROY L. HENDRICKS, et al.,<br><br>    Respondents. | Civ. No. 12-3268 (KSH)<br><br><br>OPINION |

**Katharine S. Hayden, U.S.D.J.**

### I.   INTRODUCTION

Presently before the Court is Victor Urquiaga's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3) seeking relief in the form of a stay of his removal from the United States and a remand to the Board of Immigration Appeals. (D.E. 1.) According to Urquiaga, he is currently being held in detention at Essex County Correctional Facility under an order of removal issued by the United States Immigration and Customs Enforcement division of the Department of Homeland Security. (*Id.* at 1.) His attorney argues that relief is appropriate "given that [petitioner] was provided ineffective representation throughout his removal proceedings in violation of [his] Fifth Amendment guarantee of due process throughout those proceedings." (*Id.*) (citations omitted.)  After careful review of the record, the Court has determined that it lacks jurisdiction over the instant petition based on the REAL ID Act of 2005, which limits jurisdiction over any challenge to an order of removal to the court of appeals in the circuit where the removal proceeding took place.

## II. FACTS & PROCEDURAL HISTORY

Urquiaga, a 72-year-old native and citizen of Peru, was admitted to the United States as a lawful permanent resident in 1974. In 1988 and 1993, he pled guilty in state court to criminal sexual contact of a child. (Petitioner's Br. at 2.); (Respondents' Opp. Br. at 1 & Exhs. B and C.)[1] In 2005, Urquiaga was issued a Notice to Appear in removal proceedings pursuant to Section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act ("INA") for having been convicted of crimes involving moral turpitude. (Petitioner's Br. at 2); (Respondents' Opp. Br. at 2.) At his deportation hearing, Urquiaga admitted the allegations to the Immigration Judge ("IJ") and conceded that he was removable. He sought a waiver under former INA Section 212(c), which is a "form of forgiveness of a conviction" that requires the immigration court to "balance the social and humane considerations presented in an alien's favor against the adverse factors evincing an alien's undesirability of continuing in the United States as [a] permanent resident." (March 29, 2007 Decision of the IJ appended as Exh. J to Petitioner's Br. ("Decision of IJ") at 3.) In his decision, the IJ considered Urquiaga's various "positive equities" such as his lengthy residence in the United States, his solid work history, his payment of taxes, and the fact that his two citizen children would suffer emotional hardship upon his removal.[2] Ultimately, the IJ concluded that these equities were outweighed by Urquiaga's lack of rehabilitation and untruthfulness during the proceedings. (Decision of IJ at 18.)

---

[1] The record indicates that the victims of Urquiaga's crimes were the children of his upstairs neighbor, Marisol. (March 29, 2007 Decision of the IJ appended as Exh. J to Petitioner's Br. ("Decision of IJ") at 14.) At his deportation hearing, Urquiaga contended that Marisol brought the charges against him (both times) as retribution because he refused to give her money to purchase drugs. *Id.* The IJ expressed skepticism and felt petitioner was not being candid about his relationship with Marisol, noting that it was unlikely that the mother of victims of sexual abuse would bring her children back to the home of their abuser. (*Id.* at 14-16, 18.)

[2] Urquiaga's children, who are approximately 25 and 30 years old, testified at his deportation hearing that they were not aware of why he was in removal proceedings and that he never revealed to them that he had been arrested or convicted of any crime. (Decision of IJ at 10-11.)

Urquiaga filed a timely appeal with the Board of Immigration Appeals ("BIA"). (2007 BIA Appeal appended as Exh. G to Petitioner's Br.) On October 31, 2008, the BIA dismissed the appeal, finding *de novo* that a "favorable exercise of discretion would not be in the best interest of the United States," despite Urquiaga's "unusual and outstanding" equities. (2008 BIA Op. appended as Exh. E to Petitioner's Br. at 3.) On January 27, 2009, Urquiaga filed a motion before the BIA captioned "motion to reopen," which was denied by the court after he failed to proffer any new evidence, a *prima facie* requirement. (2009 BIA Op. appended as Exh. D to Petitioner's Br. at 1.) Because his papers referred to the motion to reopen as a motion for reconsideration in the conclusion of his brief, the BIA also held that "[i]f the respondent is seeking reconsideration of our October 31, 2008 decision, the motion is untimely." (*Id.*) On September 14, 2009, Urquiaga filed a timely appeal with the Third Circuit, pursuant to 8 U.S.C. § 1252, challenging the BIA's dismissal of his motion to reconsider. (Petition for Review appended as Exh. J to the Decl. of Kirschbaum at 1.) On November 17, 2010, the Third Circuit denied the petition, observing that because his motion to reconsider was filed after the statutory deadline, "the BIA committed no error in denying it as an untimely motion without reviewing Urquiaga's substantive arguments." *Urquiaga v. Att'y Gen'l of the U.S.*, 401 F. App'x 724, 726 (3d Cir. 2010). The Third Circuit also found that "the record simply does not support a claim that Urquiaga was in any way deprived of a fundamentally fair hearing; he had an ample opportunity to be heard." (*Id.*)[3]

In his petition, Urquiaga alleges that his prior counsel was ineffective because she failed to inform him of the BIA's 2008 dismissal, failed to timely petition the Third Circuit for review

---

[3] The Third Circuit also noted that "because Urquiaga is removable for having committed a crime of moral turpitude, [the court's] jurisdiction is circumscribed . . . we can review only constitutional claims and questions of law." (*Id.*) (citing 8 U.S.C. § 1252(a)(2)(C) & (D)).

of the BIA's dismissal, and failed to file a proper motion to reconsider with the BIA. (Petitioner's Br. at 15.)

On May 22, 2012, Urquiaga was arrested by ICE officers near his residence on the outstanding final order of removal. (ICE Encounter Summary appended as Exh. G to the Decl. of Kirschbaum at 1.) The following day, he was issued a "Warrant of Removal/Deportation" notifying him that he would be permanently barred from reentering the United States pursuant to Section 212(a)(2)(A)(i)(I) of the INA. (Warrant appended as Exh. L to the Decl. of Kirschbaum Decl.) On May 30, 2012, Urquiaga filed the instant emergency habeas petition with an accompanying motion for a temporary restraining order seeking to prohibit his deportation pending the Court's adjudication of the habeas petition. (D.E. 1-2.) On June 13, 2012, this Court enjoined respondents from effectuating any removal orders until further order. (D.E. 5.) On August 3, 2012, respondents filed opposition. (D.E. 7.)

### III.   DISCUSSION & ANALYSIS

On May 11, 2005, Congress enacted the REAL ID Act, which effectively amended the INA to provide that notwithstanding Section 2241 of Title 28 "or any other habeas provision," the "sole and exclusive means for judicial review of an order of removal" rests "with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(a)(5) & (b)(2); *See also* 8 U.S.C. § 1252(b)(9) (channeling all legal and factual questions "arising from any action taken or proceeding brought to remove an alien from the United States" into the courts of appeals.) These modifications "limit all aliens to one bite of the apple with regard to challenging an order of removal, in an effort to streamline what the Congress saw as uncertain and piecemeal review of orders of removal, divided between the district courts (habeas corpus) and the courts of appeals (petitions for review)." *Bonhometre v.*

4

*Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005) (citing H.R. Conf. Rep. No. 109-72, at 173-75 (2005)).

Consistent with Congress' goal of streamlining the review of removal orders, courts in this Circuit have held that the REAL ID Act effectively strips federal district courts of their jurisdiction to review habeas petitions that implicate an alien's removal order. *See, e.g., Khouzam v. U.S. Att'y Gen'l,* 549 F.3d 235, 244-45 (3d Cir. 2008); *Appiah v. U.S. Customs & Immigration Serv.*, No. 11-317, 2012 WL 4505847, at *3 (D.N.J. Sept. 25, 2012) (Cecchi, J.); *Gallego-Gomez v. Clancy,* No. 11-5942, 2011 WL 5288590, at *2 (D.N.J. Nov. 2, 2011) (Salas, J.), *aff'd,* 458 F. App'x 91 (3d Cir. 2012); *Calderon v. Holder,* No. 10–3398, 2010 WL 3522092, at *2 (D.N.J. Aug. 31, 2010) (Hochberg, J.). As noted by respondents, the cases cited by Urquiaga in support of his argument to the contrary, *i.e.*, that district courts do have jurisdiction to review such habeas petitions, were decided *before* the REAL ID Act took effect on May 11, 2005. *See* Petitioner's Br. at 5-10 (citing *Chmakov v. Blackman*, 266 F.3d 210 (3d Cir. 2001) and *Gnokane v. Ashcroft*, No. 04-5243, 2005 WL 1006355 (E.D. Pa. Apr. 28, 2005)).

Notably, in *Jimenez v. Holder*, 338 F. App'x 194, 196 (3d Cir. 2009), citing to the explicit language of the REAL ID Act and its legislative history, the Third Circuit affirmed the dismissal of a petition for a writ of habeas similar to the one at bar. The habeas petition filed in *Jimenez* alleged that, because petitioner received ineffective assistance of counsel during his removal proceedings, a stay of petitioner's removal from the United States and remand to the BIA was appropriate. *Id.* Judge Hochberg of this district dismissed for lack of jurisdiction pursuant to the REAL ID Act (8 U.S.C. § 1252(a)(5)).

Jimenez appealed, and the Third Circuit made short shrift of his arguments that the district court committed error.

> Jimenez's petition, though not explicitly styled as a challenge to his removal order, calls for vacating the BIA's decision upholding the order of the IJ; indeed, Jimenez specifically asked the District Court to grant him a new removal hearing. Accordingly, the Court properly cast the petition as a challenge to an order of removal and determined that it lacked jurisdiction over that claim pursuant to the REAL ID Act. Moreover, as Jimenez's petition was not pending when the REAL ID Act was enacted--in fact, it was filed more than two years after enactment--the Court correctly determined that the petition was not subject to transfer to this Court.

*Id.* (citations omitted).

As in *Jimenez,* Urquiaga is essentially challenging his final order of removal by raising the alleged ineffective assistance of his prior counsel. He is asking that this Court "remand his case to the appropriate administrative court, such as the Board," just as Jimenez sought a new removal hearing. (Petitioner's Br. at 5) In essence, the petition asks the district court to vacate the BIA's denial of Urquiaga's motion to reconsider. Any review of that decision of the BIA, however framed in the petition, now must occur in the appropriate court of appeals. *See Bonhometre,* 414 F.3d at 445 ("Under the new judicial review regime imposed by the Real ID Act, a petition for review [filed in the appropriate court of appeals] is now the sole and exclusive means of judicial review for all orders of removal.")[4] Nor is this Court in a position to transfer the petition to the Third Circuit; under § 106(c) of the REAL ID Act only if a case were pending when the Act was passed does the district court have that authority, and this petition was filed more than 7 years after enactment.

---

[4] Because Urquiaga's application seeks a stay of the final order of removal, the Court finds persuasive respondents' argument that 8 U.S.C. § 1252(g) further divests this Court of jurisdiction. Indeed, courts have held that a request to stay the execution of a removal order falls within the ambit of Section 1252(g), which prohibits federal district courts from entertaining "any cause or claim by . . . an alien arising from the decision or action . . . to . . . execute removal orders." *Nken v. Chertoff,* 559 F. Supp. 2d 32, 35-36 (D.D.C. 2008).

Finally, because the Court lacks jurisdiction to hear the petition, it is neither necessary nor appropriate to address the merits of the claim of ineffective assistance of counsel or respondents' argument that habeas relief is inappropriate because of failure to exhaust administrative remedies.

**CONCLUSION**

For the foregoing reasons, this petition is dismissed. An appropriate order will be entered.

Date: October 25, 2012

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.